PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. EMILIO ALVARADO, Defendant and Appellant.

No. 2678. Argued March 17, 1926.—Decided March 31, 1926.

*Leopoldo Tormes* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was convicted of carrying a knife and says that—

"1.—The court erred in not allowing the defendant to cross-examine witness Antonio Nieves regarding his relations with the

defendant in order to determine the grounds or interest that actuated the testimony of said witness.

"2.—The judgment in this case is contrary to the proof and to the law."

From the testimony of Antonio Nieves we take the following extract:

"Q.—Did anything happen to you in connection with this defendant? A.—Yes, sir. Q.—What happened to you? A.—It must have been about 2.30 a. m.; I was already in my underclothes ready to go to bed, and while I was standing under the light this man came home to sleep and began to open the door but he again tried to start a row and in restraining him he opened the door and went out and challenged me to follow him, which I refused to do, and then when he returned, for I refused to accompany him, he attacked me with a knife. Q.—What knife? A.—A knife that long. Q.—What color was it? A.—The handle appeared to be red. Q.—Is it a small or large knife? A.—Like that, with handle and everything. Q.—Was it or was it not in the form of a dagger? A.—It did not have the form of a dagger, and when he attacked me and while running after me a man who is employed as watchman there, made his appearance and then defendant took to his heels and I remained on the spot. Q.—What became of the knife? A.—They found the knife at his house. Q.—At his house, or in the street? A.—In the yard, at the foot of the stairway. Q.—Is there a yard there? A.—The patio is like that. Q.—How is this house situated? A.—The house is next to mine and is fenced with zinc. Q.—To whom did the yard belong? A.—It belongs to the house of the defendant. Q.—Are there many houses in that yard? A.—Only one. The one belonging to him. Q.—Who put that knife there? A.—I suppose it must have been he himself. Q.—Attorney. I move to strike that. Judge.—Yes, let it be stricken. A.—He ran after me with it. I know the knife as belonging to him. Q.—Just look at this knife. A.—Yes, sir. Q.—You do not call this kind of knife a dagger? A.—No sir, I think that a dagger has two edges. Attorney. Q.—Were you a friend of this man, or had you quarreled with him? Fiscal.—That has nothing to do with this case. Judge.—We are now investigating the matter of carrying weapons. The court sustains the fiscal's objections. Attorney.—I respectfully beg to take exception."

Section 21 of the Law of Evidence reads thus:

"A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence."

Nieves seems to have referred to a previous quarrel. When referring to defendant he said that *"volvió a buscarme la garata."* The other acts imputed to defendant by' this witness and described on direct examination also seem to point to some previous incident as the probable, if not the only, logical explanation of what would otherwise appear to be a most remarkable and abnormal course of conduct. The first question asked on cross-examination, therefore, would have been perfectly proper as within the scope of the direct examination without regard to the element of bias and the right of defendant to impeach the witness in the usual manner, if not indeed by the only method permissible.

By the weight of authority the trial judge has some discretion in the matter of limiting such cross-examination and, we think, should keep the same within reasonable bounds. But we are not aware of any case that goes so far as to say that the defendant in a criminal case may be deprived of all opportunity to show the existence of an emotional basis for bias on the part of a prosecuting witness.

In 2 Wigmore on Evidence at page 338, section 951, we find the following statement:

"Sec. 951.—Details of a Quarrel on Cross-examination. It is obvious that, in ascertaining the state of feeling from the' fact of a quarrel or other circumstances, the mere fact alone has little significance; without a knowledge of the details, we cannot well know the extent of the ill-feeling and the allowance to be made against the testimony. This necessity for ascertaining details is recognized by some Courts without limitation. But in two ways inconvenience may ensue: (1) the detailed inquiries, the denials, and the explanations, are liable to lead to multifariousness and a confusion of issues; (2) the detailed facts of the dispute may involve a prejudice to the character of the witness, or of his opponent, which it would be

desirable to keep out of the case. From this point of view, some line of limitation must be drawn, and an effort made to avoid these two drawbacks. Accordingly, it is commonly held that the details of the quarrel or other conduct may be excluded, in the trial Court's discretion.''

Carlos Torres, the night watchman, says that defendant was advancing upon Nieves with a knife in hand when witness interfered and held defendant until a policeman arrived upon the scene. This witness also says that he received a blow from Alvarado upon attempting to remonstrate with him. No weapon could be found by the policeman or by either of the witnesses last above mentioned at the time of the arrest, although a search was made.

Alvarado was taken to police headquarters and the policeman returned later to look for the knife. His testimony is more vague and unsatisfactory than that of any other witness.

Alvarado insists that the knife produced at the trial belonged to Nieves who, to say the least, had quite as ample an opportunity as that afforded Alvarado to place the knife where it is said to have been found a half hour or more after the arrest of Alvarado.

In such circumstances we are unable to say that the error first above specified by appellant was not prejudicial.

The judgment appealed from must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.